IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-124-D

| | |
|---|---|
| CHERYL FOGG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| U.S.A. TRANSPORTATION | ) |
| SECURITY ADMINISTRATION, et al., | ) |
| | ) |
| Defendants. | ) |

On April 4, 2022, Cheryl Fogg ("plaintiff" or "Fogg") filed a complaint against the Transportation Security Administration ("TSA"), Raleigh-Durham Airport Authority ("RDAA"), Officer Jeremy McFarland ("McFarland"), Officer Jonathan Johnson ("Johnson"), TSA Officer Tashuana Varnado ("Varnado"), and TSA Officer Cory Shepherd ("Shepherd") alleging violations of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution against the RDAA (count one), the TSA (count two), and McFarland, Johnson, Varnado, and Shepherd (count three ). See Compl. [D.E. 1] ¶¶ 79–106. Fogg also sought relief under North Carolina law against McFaand, Johnson, Varnado, and Shepherd for intentional infliction of emotional distress (count four) and negligent infliction of emotional distress (count five). See id. at ¶¶ 107–17. Fogg also sought relief under North Carolina law against the RDAA, McFarland, and Johnson for malicious prosecution (count five) and against McFarland, Johnson, and Varnado for false imprisonment/false arrest (count six). See id. ¶¶ 118–32.

On September 28, 2022, pursuant to the Federal Tort Claims Act, the United States substituted itself as party defendant for the TSA, Varnado, and Shepherd as to counts two, four, five,

and six [D.E. 19]. The same day, the United States moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted [D.E. 20] and filed a memorandum in support [D.E. 21]. Fogg did not respond to this motion. On November 17, 2022, Fogg voluntarily dismissed her claims against the TSA and against Varnado and Shepherd (collectively, "TSA defendants") in their official capacities [D.E. 35].[1]

On October 5, 2022, defendants Johnson and McFarland (collectively, "officer defendants") and the RDAA moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 27] and filed a memorandum in support [D.E. 25]. See Fed. R. Civ. P. 12(b)(6). On November 25, 2022, Fogg responded in opposition [D.E. 36]. On December 16, 2022, the officer defendants and the RDAA replied [D.E. 38]. On January 17, 2023, the TSA defendants moved to dismiss [D.E. 39] and filed a memorandum in support [D.E. 40]. See Fed. R. Civ. P. 12(b)(6). As explained below, the court grants defendants' motions to dismiss, dismisses Fogg's claims under 42 U.S.C. § 1983, dismisses Fogg's claims against the TSA defendants, and declines to exercise supplemental jurisdiction over Fogg's state law claims against the RDAA, McFarland, and Johnson.

I.

On the morning of April 14, 2019, Fogg arrived at the Raleigh-Durham International Airport in order to fly to Nebraska for a work trip. See Compl. [D.E. 1] ¶ 14. Fogg entered the security checkpoint area and was designated for additional screening when an "alarm went off signaling [Fogg] had been selected for a random search." Id. at ¶ 17. After Fogg went to the additional screening area, she encountered TSA Officer Varando. See id. at ¶ 20. Varando (a woman) waited

---

[1] When Fogg dismissed her claims against the TSA and against Varando and Shepherd in their official capacity, she also dismissed the claims against the United States. Therefore, the court dismisses as moot the United States' motion to dismiss the claims against it.

2

to begin examining Fogg until TSA Officer Shepherd (a man), Varando's manager, arrived to observe. See id. at ¶ 24. During the examination, Varando reached into Fogg's pants and made contact with Fogg's "intergluteal cleft." Id. at ¶ 30. Varando also frisked Fogg's "buttocks in a manner that [Fogg] was not accustomed to based upon her experience." Id. at ¶ 33. Fogg felt uncomfortable, yet remained silent. See id. at ¶¶ 32, 34.

Fogg eventually voiced her discomfort to Shepherd. See id. at ¶ 35. Fogg asked that another officer complete the examination. See id. Despite Fogg's request, Varando continued the pat down and made contact with Fogg's genital area. See id. at ¶ 38. After Fogg made repeated efforts to have Shepherd intervene, TSA manager Tasha Dixon ("Dixon") (a woman) arrived and spoke with Fogg. See id. at ¶¶ 40–44. Dixon told Fogg that Fogg could have a private screening. See id. at ¶ 46. Fogg agreed. See id. Dixon, however, prevented Fogg from retrieving her purse and other belongings from the X-ray machine. See id. at ¶¶ 47–50. Officer McFarland (a man) then approached and told Fogg to follow Dixon into the private screening area. See id.

In the private screening room, Dixon reprimanded Fogg and refused to listen to Fogg's complaints about Varnado. See id. at ¶¶ 54–56. When Fogg exclaimed "please listen to me," McFarland came into the room, "shook his finger in [Fogg's] face," and told Fogg "I knew you were going to be a problem!" Id. at ¶¶ 56–57 (quotations omitted). Fogg "lightly touched" McFarland's arm to "calm the situation down." Id. at ¶ 58. McFarland then asked, "Did you just touch me?" Id. at ¶ 59. He proceeded to "yell at the top of his lungs, 'Stop grabbing me!'" Id. at ¶¶ 59–60. Other RDAA officers, including Officer Johnson (a man), came into the room to investigate. See id. at ¶¶ 64–69. Officers Johnson and McFarland then arrested Fogg, placed her in handcuffs, and took Fogg to a holding cell for an hour. See id. at ¶ 70.

3

Officer Johnson transferred Fogg from the holding cell to the Wake County Detention Center. See id. at ¶ 71. On the ride from the airport to the detention center, Johnson told Fogg that he would "speak favorably about [Fogg] because she had been cooperative." Id. at ¶ 72. Fogg was charged with misdemeanor assault on a law enforcement officer and disorderly conduct. See id. at ¶ 75.

Fogg went to trial in Wake County District Court and was acquitted. See id. at ¶ 76. After the trial, Fogg and her attorney heard McFarland tell Johnson, "that is why you lie." Id. at ¶ 78.

II.

Defendants move to dismiss the complaint for failure to state a claim. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [the] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

4

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

As for count one, the RDAA argues that Fogg has not plausibly alleged municipal liability under 42 U.S.C. § 1983. Municipal entities, such as the RDAA, cannot be held liable under section 1983 solely because they employed a tortfeasor. Rather, when a plaintiff sues a municipal entity—directly or in an official-capacity suit—a plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell v. Dept. of Social Servs. of N.Y., 436 U.S. 658, 691 (1978); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). There are four ways in which a plaintiff can establish municipal liability for a policy or custom:

(1) through an express policy, such as a written ordinance or regulation; (2) through

5

>  the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690, 694; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988). However, even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd., 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis omitted); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Thus, deliberate indifference and causation are separate requirements. See id.

6

Fogg has not plausibly alleged that her injuries stemmed from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the RDAA. Fogg's complaint contains only boilerplate allegations about RDAA policy made without any factual basis. See Compl. ¶¶ 81–86. The facts that Fogg does allege stem from a single alleged incident. See id. at ¶¶ 10–78. This alleged incident alone does not plausibly suggest that the RDAA has policies for their officers to engage in routine "violations of constitutional rights" or "fanatical criminal prosecution." Id. at ¶ 83. Moreover, a single isolated incident involving municipal employees does not establish a policy or custom sufficient to establish liability under section 1983. See City of Ok. City v. Tuttle, 471 U.S. 808, 823–24 (1985); Gordon v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); May v. Univ. Health Sys. of E. Carolina, Inc., No. 4:21-CV-14, 2021 WL 5868135, at *6 (E.D.N.C. Dec. 9, 2021) (unpublished).

Fogg also argues that she will demonstrate the RDAA's alleged failure to train and deliberate indifference through "interrogatories and depositions upon the commencement of discovery." [D.E. 36] 9. Simply forecasting the possibility of receiving additional evidence during discovery does not move Fogg's section 1983 claim against the RDAA from "mere possibility" to "plausibility." Iqbal, 556 U.S. at 678–79; see Twombly, 550 U.S. at 570. Thus, the court dismisses Fogg's section 1983 claim against the RDAA.

B.

As for count three, the officer defendants move to dismiss the complaint based on qualified immunity. Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see City of Escondido v. Emmons, 139 S. Ct. 500,

7

503–04 (2019) (per curiam); Kisela v. Hughes, 138 S. Ct. 1148, 1152–55 (2018) (per curiam); Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589–93 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017) (per curiam); Ziglar v. Abbasi, 582 U.S. 120, 150–151 (2017); Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir. 2013). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 138 S. Ct at 1152.

In analyzing qualified immunity, the court asks "whether the facts that a plaintiff has shown ... make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quotations omitted); see Wood v. Moss, 572 U.S. 744, 757 (2014); Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). Courts may decide which question to address first. See Pearson, 555 U.S. at 236. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up); see Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7 (2021) (per curiam). Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Rivas-Villegas, 142 S. Ct. at 7–8. Qualified immunity shields a defendant if the answer to either question is "no." See al-Kidd, 563 U.S. at 735; Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

A defendant may raise a qualified immunity defense in a Rule 12(b)(6) motion. See Owens,

767 F.3d at 396. However, a defendant must overcome a "formidable hurdle" to successfully assert a qualified immunity defense "at this early stage in the proceedings." Id. (quotation omitted); see Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006). Under the Rule 12(b)(6) standard, dismissal is inappropriate if a plaintiff pleads a claim that is plausible on its face. See Wood, 572 U.S. at 757–58; Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63. "The plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." Owens, 767 F.3d at 396; see Wood, 572 U.S. at 757–58.

Deciphering which alleged acts of the officer defendants Fogg believes violated her constitutional rights is difficult. Fogg's complaint makes no attempt to link the officer defendants to specific alleged facts giving rise to alleged constitutional violations. See Compl. ¶ 100. For example, Fogg alleges that the officer defendants violated Fogg's Fourth Amendment right against unreasonable searches and seizures. See Compl. ¶¶ 84, 100, 102. Fogg also alleges that the officer defendants unlawfully detained her and failed to read her Miranda rights, thereby violating her Fourth and Fifth amendment rights. See Compl. ¶¶ 84, 100; [D.E. 36] 10. However, in Fogg's memorandum, Fogg only argues in broad strokes that "Plaintiff [sic] rights and civil liberties that were violated by Defendants McFarland and Johnson are clearly established rights such as unreasonable search seizure, violation of equal protection clause of Constitution, and a violation of any applicable state laws." [D.E. 36] 11 n.1.

As for Fogg's initial detention, the defendant officers permissibly screened Fogg and her bags (including detaining and patting down Fogg). See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec., 653 F.3d 1, 10–11 (D.C. Cir. 2011); United States v. Aukai, 497 F.3d 955, 962–63 (9th Cir. 2007) (en banc); United States v. Hartwell, 436 F.3d 174, 177–81 (3d Cir. 2006) (Alito, J.); United States

9

v. DeAngelo, 584 F.2d 46, 47–48 (4th Cir. 1978); United States v. Edwards, 498 F.2d 496, 499–501 (2d Cir. 1974) (Friendly, J.); see also City of Indianapolis v. Edmond, 531 U.S. 32, 47–48 (2000) (discussing the Fourth Amendment and recognizing "validity" of warrantless "searches at places like airports and government buildings, where the need for such measures can be particularly acute"); Chandler v. Miller, 520 U.S. 305, 323 (1997) (same); Nat. Treasury Emp. Union v. Van Raab, 489 U.S. 656, 675 n.3 (1989) (same).

As for Fogg's arrest, Fogg's complaint establishes that the officer defendants had probable cause to arrest Fogg for assault and battery on an officer. See Compl. ¶ 58. Under North Carolina law, battery is defined as "an assault whereby any force, however slight, is actually applied to the person of another directly or indirectly." State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 829 (1922) (emphasis added); see State v. West, 146 N.C. App. 741, 742, 554 S.E.2d 837, 840 (2001); N.C. Gen. Stat. § 14-33(c)(4) (criminalizing committing battery against a government official). Fogg admits in her complaint that she "lightly touched Defendant McFarland's left forearm" during the screening process. Compl. ¶ 58. Fogg's conduct establishes probable cause that she violated N.C. Gen. Stat. § 14-33(c)(4). See Wesby, 138 S. Ct. at 586. "To determine whether an officer has probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Id. (cleaned up). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily or even usefully, reduced to a neat set of rules." Id. (cleaned up). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. (cleaned up). "Probable cause is not a high bar." Id. (cleaned up). Moreover, Fogg's subsequent acquittal of the assault charge does not mean that the officers lacked probable cause to arrest her.

10

In opposition, Fogg suggests that Officer McFarland's alleged quip to Officer Johnson following Fogg's acquittal, "that is why you lie," suggests either that Fogg's detention was illegal or that the prosecution against her was improper. [D.E. 36] 12; Compl. ¶ 78. Fogg, however, does not provide any context for this vague snippet of an alleged conversation between the officers. Assuming without deciding that this conversation actually occurred, this statement alone does not plausibly suggest misconduct during Fogg's detention, arrest, or prosecution.[2] As discussed, the officers had authority to detain Fogg, to pat her down, to arrest her, and to charge her with assaulting a police officer.

As for Miranda, the officers did not have to give Fogg a Miranda warning during the administrative screening process and before arresting her. See, e.g., Berkemer v. McCarty, 468 U.S. 420, 435–42 (1984); United States v. Bengivenga, 845 F. 2d 593, 595–600 (5th Cir. 1988) (en banc). And Miranda also did not require the officers to inform Fogg why the officers were detaining her. See, e.g., United States v. Clenney, 631 F.3d 658, 668 (4th Cir. 2011). Moreover, and in any event, Fogg has not plausibly alleged that any officer defendants attempted to use any of Fogg's allegedly unprotected statements against her in court. Furthermore, even if the officer defendants somehow violated Fogg's Miranda rights (and they did not), a violation of a person's Miranda rights alone is not a basis for section 1983 relief. See Vega v. Tekoh, 142 S. Ct. 2095, 2101 (2022).

As for the other alleged violations, Fogg's complaint vaguely refers to alleged violations of the Equal Protection and Due Process Clauses. See Compl. ¶¶ 84, 94, 102. Fogg's memorandum does not expand on these alleged violations, but simply references the Equal Protection Clause, the

---

[2] Indeed, the context of this conversation suggests that McFarland is accusing Fogg of lying in the criminal trial in order to secure her acquittal. See Compl. ¶ 78. McFarland's alleged frustration at the outcome of the trial does not constitute a violation of Fogg's rights.

11

Due Process Clause, and the North Carolina Constitution's "fruits of their own labor" clause. [D.E. 36] 7. As for the North Carolina Constitution, Fogg cannot enforce the North Carolina Constitution via 42 U.S.C. § 1983. See, e.g., Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Blessing v. Freestone, 520 U.S. 329, 340–41 (1997) ("In order to seek redress through [section] 1983 . . . a plaintiff must assert the violation of a federal right . . . ."); Carey v. Throwe, 957 F. 3d 468, 479 (4th Cir. 2020). As for Fogg's vague references to the Equal Protection Clause and Due Process Clause, the court is not a Labrador retriever during duck season and declines to hunt through the complaint, the United States Constitution, the United States Code, or relevant precedent for violations of federal law that Fogg failed to include in her complaint. Cf. Hensley ex rel. N.C. v. Price, 876 F.3d 573, 580–81 n.5 (4th Cir. 2017).

Fogg has not plausibly alleged that the officer defendants violated her rights under the United States Constitution or federal law. Therefore, the officer defendants enjoy qualified immunity from Fogg's claims, and the court dismisses her section 1983 claims against the officer defendants.

C.

As for count three, the TSA defendants argue that a plaintiff can raise a section 1983 claim only against state actors operating under the color of state law. See [D.E. 40] 2; 42 U.S.C. § 1983.[3] Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

---

[3] On May 16, 2023, TSA defendants filed a notice of subsequently decided controlling authority citing Osmon v. United States, 66 F.4th 144 (4th Cir. 2023). See [D.E. 44]. In Osmon, the Fourth Circuit held that a court has subject-matter jurisdiction over an FTCA claim against TSA screener because TSA screeners are "officers" within the meaning of the FTCA's "law enforcement proviso." Id. at 148. In this case, however, the court does not reach TSA defendant's subject-matter jurisdiction argument because Fogg voluntarily dismissed her claims against the United States. See [D.E. 35].

12

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 does not apply to federal actors. See, e.g., D.C. v. Carter, 409 U.S. 418, 424–25 (1973); Wheeldin v. Wheeler, 373 U.S. 647, 650 n.2 (1963); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006); Orr v. United States EPA, No. 1:17-CV-00141, 2017 WL 2434779, at *2 (W.D.N.C. June 5, 2017) (unpublished). Fogg admits in her complaint that "at all times relevant to this complaint" TSA defendants operated "under the color of federal law and during the course and scope of their employment with Defendant TSA." Compl. ¶ 90. Thus, the court dismisses Fogg's section 1983 claim against the TSA defendants.

### III.

As for Fogg's state law claims in counts four, five, and six, against the RDAA, McFarland, and Johnson, a court may decline to exercise supplemental jurisdiction over a state-law claim when (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over" the federal claim or claims; (3) the court has "dismissed all claims over which it has original jurisdiction;" or (4) other "exceptional circumstances" present "compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1)–(4). Additionally, a court may decline to exercise supplemental jurisdiction when "values of economy, convenience, fairness, and comity" make retaining jurisdiction inappropriate. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988), superseded on other grounds by 28 U.S.C. § 1447(c); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001); Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995). Eliminating all federal claims before trial generally suffices to decline supplemental jurisdiction over pendent

state-law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see Shanaghan, 58 F.3d at 110 ("Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); see also Walsh v. Mitchell, 427 F. App'x 282, 283 (4th Cir. 2011) (per curiam) (unpublished); Root v. Cnty. of Fairfax, 371 F. App'x 432, 435 (4th Cir. 2010) (per curiam) (unpublished).

The court has reviewed the entire record and governing law. The court declines to exercise supplemental jurisdiction over the remaining state-law claims against the RDAA, McFarland, and Johnson.

IV.

In sum, the court GRANTS IN PART the RDAA and officer defendants' motion to dismiss [D.E. 27], GRANTS the TSA officers' motion to dismiss [D.E. 39], and DISMISSES WITH PREJUDICE counts one, two, and three against all defendants and all counts against the United States and the TSA defendants. The court DECLINES to exercise supplemental jurisdiction over plaintiff's remaining state-law claims against the RDAA, McFarland, and Johnson and DISMISSES WITHOUT PREJUDICE the state-law claims against those three defendants. The court DISMISSES AS MOOT the United States' motion to dismiss [D.E. 20].

SO ORDERED. This 24 day of May, 2023.

                                                JAMES C. DEVER III
                                                United States District Judge